UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DEBRA D. GONZALEZ                                                                     PLAINTIFF

VERSUS                                                    CIVIL ACTION NO. 1:14CV317-LG-RHW

CAROLYN W. COLVIN                                                                  DEFENDANT

### PROPOSED FINDINGS OF FACT AND RECOMMENDATION

Debra D. Gonzalez filed an application for disability insurance benefits and supplemental security income alleging disability beginning March 1, 2011, based on a combination of mental and physical impairments.  Doc. [12] at 14, 164-78.  Ultimately, her application was denied by an administrative law judge (ALJ).  *Id.* at 14-23.  Gonzalez filed the instant lawsuit appealing the decision of the ALJ.  Doc. [1].  Pending before the Court is Gonzalez's motion for summary judgment raising the following issues: (1) whether the ALJ erred in finding that Gonzalez's mental impairments did not meet the severity standard at step 2; (2) whether the ALJ failed to include in the residual functional capacity (RFC) limitations in Gonzalez's social function and concentration, persistence and pace; (3) whether the ALJ erred in finding that Gonzalez was able to perform past relevant work as a security guard and telemarketer "as generally" performed by a person with her limitations; (4) whether the ALJ erred in finding that Gonzalez's neuropathy, bowel and bladder incontinence, and headaches did not meet the severity standard at step 2; and (5) whether the ALJ failed to provide adequate reasons for not giving controlling weight to the treating physician's opinion.  Doc. [13].

The ALJ concluded that Gonzalez had severe impairments of chronic obstructive pulmonary disease (COPD) and asthma.  Doc. [12] at 17.  The ALJ also considered Gonzalez's medically determinable mental impairments of depression and anxiety disorder but concluded that they did not qualify as severe impairments.  *Id.* at 18-19.  The ALJ assigned to Gonzalez a

residual functional capacity (RFC) to perform light work, except that she can stand and walk for six hours of an eight hour day; sit for six hours; cannot climb ladders, ramps, or scaffolds; can occasionally climb ramps and stairs; must use a cane to ambulate; and cannot work around dust fumes, gases, noxious odors or extreme heat or cold due to COPD and asthma.[1]  *Id.* at 19. Significant to the issues on appeal, the ALJ did not assign any limitations based on mental impairments.  With the assistance of a vocational expert's testimony, the ALJ determined that Gonzalez is capable of performing past relevant work as a security guard and telemarketer.[2]  *Id.* at 23.  Accordingly, the ALJ concluded that Gonzalez is not disabled within the meaning of the Social Security Act.  *Id.*

### Law and Analysis

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g).  This standard requires supporting evidence that is "'more

---

[1] In an apparent contradiction, the ALJ found that Gonzalez cannot climb ramps but that she also can occasionally climb ramps.  Doc. [12] at 19.  Gonzalez did not identify this contradiction as a point of error, and it is unclear to the undersigned what, if any, significance this would have in determining whether to remand the case to the Commissioner.

[2] In an earlier decision that is part of the record, an ALJ concluded that Gonzalez could *not* perform her past relevant work based on severe impairments of carpal tunnel syndrome, COPD, mood disorder, and borderline intellectual functioning.  Doc. [12] at 97.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988).  "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).  While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment.  42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5).  The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a), § 404.920(a).  Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work.  *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but

the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th

Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the

SSA must demonstrate that the claimant can perform another occupation that exists in significant

numbers in the national economy. The burden then shifts back to the claimant to establish that

he cannot perform this alternative employment. *Id*.

**Severity Analysis:  Mental Impairments**

Gonzalez argues that the ALJ's finding that her mental impairments did not satisfy the *de*

*minimis* severity standard at step 2 was contrary to every single medical opinion of record,

including those from the Social Security Administration's own psychologists. Gonzalez further

argues that the ALJ used Gonzalez's financial condition against her when concluding that her

mental condition was not severe and that the ALJ substituted his lay judgment for that of mental

health professionals. Ultimately at issue is whether substantial evidence supports the ALJ's

finding that Gonzalez did not have a severe mental impairment.

As an initial matter, the undersigned agrees with Gonzalez that with respect to severity

analysis, it is irrelevant whether her depression was caused by physical impairments or had some

other origin. The relevant question is simply whether Gonzalez has a mental impairment and

whether it is severe. The cause of Gonzalez's mental impairment does not make the condition

any more or less severe as an impairment. To the extent that the ALJ relied on this finding, it

was in error.

Gonzalez also argues that she is poor and has difficulty affording the treatments that

might help her mental condition. She asserts that the ALJ held this financial hardship against

her, in violation of Social Security Ruling (SSR) 82-59. *See* Social Security Ruling 82-59; 1982

WL 31384.  The undersigned finds that Gonzalez's reliance on SSR 82-59 is misplaced.  It is true

that the ALJ relied, at least in part, on the absence of a history mental health treatment to find

that Gonzalez's mental condition did not qualify as severe.  However, Gonzalez's record citations

do not indicate that she failed to obtain mental health treatment as a result of a financial hardship.

*See* Doc. [12] at 65, 71, 141, 143, 156, 371, 375, 649.  A review of these record citations reveals

that Gonzalez's inability to pay for treatment relates almost exclusively to her neuropathy and

COPD rather than treatment for mental health conditions.  Moreover, it is unclear to what to

extent, if any, SSR 82-59 applies to Gonzalez's case.  Social Security Rule 82-59 is the agency's

policy statement regarding a claimant's failure to follow a prescribed course of treatment.  The

procedures mandated by SSR 82-59 only apply to claimants who would otherwise be disabled

within the meaning of the Act but who fail without justifiable cause to follow treatment

prescribed by a treating source.  *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001);

*Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995).  There is no indication in the record that

Gonzalez's mental impairment is attributable to a failure to follow a course of treatment

prescribed by a treating source.

       Having dispensed with these side issues, the central question now before the undersigned

is whether the ALJ erred in determining that Gonzalez's mental impairments did not qualify as

severe impairments.  A severe impairment is defined as "any impairment or combination of

impairments which significantly limits [the claimant's] physical or mental ability to do basic

work activities."  20 C.F.R. § 404.1520(c).  In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985),

the Fifth Circuit held that an ALJ must reference *Stone* or the correct severity standard, which

provides that "an impairment can be considered as not severe only if it is a slight abnormality

having such minimal effect on the individual that it would not be expected to interfere with the

individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d

at 1011.  In this case the ALJ did cite to *Stone v. Heckler* and recited the appropriate standard of

severity.  Doc. [12] at 18.

The Commissioner determines the severity of a claimant's mental impairments under four

broad functional areas:  Activities of daily living; social functioning, concentration, persistence

or pace; and episodes of decompensation.  20 CFR §§ 404.1520(c)(3), 416.920(c)(3).  When the

ALJ finds no or only mild limitation in these four areas of mental functioning, the claimant's

impairment generally is not found to be severe unless the evidence otherwise indicates more than

minimal limitations in the claimant's ability to do basic work activities.  20 CFR §§

404.1520(d)(1), 416.920(d)(1).  The ALJ considered Gonzalez's mental impairment and found

that she had only mild limitations in her activities of daily living; social functioning; and

concentration, persistence or pace; and that she displayed no episodes of decompensation.   Doc.

[12] at 18-19.  Consequently the ALJ concluded that Gonzalez's mental impairment did not

qualify as severe at step 2 of the five step sequential analysis.  The question before this Court is

whether the ALJ's conclusion is supported by substantial evidence.

The ALJ found that the medically determinable mental impairments of depression and

anxiety disorder did not cause more than minimal limitation in her ability to perform basic work

activities.  *Id.* at 18-19.  In support of this conclusion, the ALJ noted that Gonzalez's testimony

that she heard music and people talking that kept her awake was inconsistent with her report to

Dr. Matherne, when she denied delusions or hallucinations.  The ALJ also noted that at the

consultative examination with Dr. Matherne, "there was no indication of tangential or

circumstantial thinking, anger management problems or suicidal ideation.  She was alert and

fully oriented.  She was able to interpret proverbs.  She had no history of mental health

treatment." *Id.* at 18.  The ALJ further noted that Gonzalez has no on-going mental counseling or

psychiatric admissions.  The ALJ then considered the four functional areas for evaluating mental

disorders in section 12.00C of the Listing of Impairments.  *Id.* at 18-19.

The ALJ's finding of mild limitations with respect to daily living is supported by

substantial evidence.  Dr. Bryman Williams opined that Gonzalez has only minimal limitations

with daily living.  *Id.* at 303.  The ALJ referenced Dr. Williams' opinion in his decision, albeit in

his discussion of Gonzalez's RFC and *not* in the severity analysis.  *Id.* at 22.  Nevertheless, the

ALJ relied on Gonzalez's own testimony and found that she had mild limits in her activities of

daily living based on statements that she prepared lunch for herself, help with laundry and

housework, and fed and watered a small dog.  *Id.* at 18.  He further concluded that limitations in

daily living activities are focused on Gonzalez's physical condition rather than her psychological

state.  *Id.*  In the third functional area; concentration, persistence, or pace; the ALJ also found

only mild limitations.  *Id.* at 19.  Although Dr. Matherne concluded that Gonzalez is moderately

impaired in this area, the ALJ's conclusion finds support in Dr. Williams' opinion, who found no

or minimal limitations in concentration, persistence or pace.  *Id.* at 290, 303, 307-09.  As

mentioned earlier, the ALJ did not cite to Dr. Williams' opinion when assessing the severity of

her mental impairment.  With respect to the fourth functional area, the medical records do not

appear to report any episodes of decompensation of extended duration.  *See id.* at 19.

Returning to the area of social functioning, it presents a closer question as to whether

substantial evidence supports the ALJ's conclusions.  The ALJ determined that Gonzalez has

only mild limitation in the area of social functioning.  In his decision, the ALJ appears to rely

exclusively on Gonzalez's testimony.  Gonzalez reported mostly having contact just with her

brother; that she rarely talked to her mother and daughter by phone; and that stress made her

irritable.  *Id.* at 19.  The uncontradicted medical source opinions indicate that Gonzalez suffered

from depression and social anxiety disorder.  *See Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th

Cir. 2001)(ALJ's non-severity finding was not supported by substantial evidence where

examining psychologist rendered uncontroverted opinion that claimant had severe depression).

Dr. Richard Gorman conducted a neurological consultative exam and diagnosed Gonzalez with

depression and prescribed medication to treat depression.  Doc. [12] at 267-68, 371-72, 646.  Dr.

J.D. Matherne performed a psychological consultation and concluded that Gonzalez suffered

from major depressive disorder, moderate without psychosis, social anxiety disorder, and mixed

personality disorder with borderline features.  *Id.* at 290.  Dr. Williams completed a Psychiatric

Review Technique form and RFC assessment and identified medically determinable impairments

of major depressive disorder and social anxiety.  *Id.* at 296, 298.  Moreover, the uncontradicted

medical source evidence indicates that Gonzalez's social functioning limitations are something

greater than mild.  *See Holzberg v. Astrue*, 679 F.Supp.2d 1249, 1261 (W.D. Wash. 2010)(ALJ

erred in finding depression not severe where evidence indicated moderate limitations in several

mental functional areas).  For example, Dr. Williams concluded that Gonzalez is moderately

limited in her ability to interact appropriately with the general public, in her ability to accept

instructions and respond appropriately to criticism from supervisors, and in her ability to get

along with coworkers or peers without distracting them or exhibiting behavior extremes.  *Id.* at

308.  In the narrative portion of the evaluation, Dr. Williams further stated that Gonzalez has

moderate impairment in her ability to relate to and interact with others to get needs met. *Id.* at

309.  The ALJ did not indicate what weight, if any, he accorded to Dr. Williams' opinion.  Dr.

Matherne also concluded that Gonzalez is moderately limited in maintaining social functioning.

*Id.* at 303.  However, the ALJ gave little weight to Dr. Matherne's opinion.

Even if the ALJ's failure to identify a mental impairment as severe constitutes an error,

the error in and of itself does not justify remand, because the severity or non-severity of this

condition ultimately was not determinative of Gonzalez's disability.  At step 2, the ALJ found

that Gonzalez had the severe impairments of COPD and asthma.  Thus the ALJ found that

Gonzalez prevailed at step 2 and then proceeded to the remaining steps when evaluating

Gonzalez's claim of disability.  Consequently, the severity or non-severity of Gonzalez's mental

impairment by itself does not provide a basis for remand.  *See Mays v. Bowen*, 837 F.2d 1362,

1364 (5th Cir. 1988); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Jones v. Bowen*, 829

F.2d 524, 526 n.1 (5th Cir. 1987); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987);

*Shipley v. Sec'y of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987).  Instead, remand is

predicated on the closely-related issue of the ALJ's failure to include mental limitations in the

RFC.

**Residual Functional Capacity:  Mental Limitations**

The ALJ did not include any mental limitations whatsoever as part of Gonzalez's RFC.

*Id.* at 19.  Gonzalez argues that the the ALJ erred in this omission.  At issue is whether

substantial evidence supports the ALJ's RFC finding that Gonzalez has no mental limitations.

The Commissioner does not cite to any specific evidence in the record that would support the

omission of mental limitations.  The Commissioner merely points to the fact that the ALJ

considered the conclusions of Dr. Gorman and Dr. Williams and further argues that the record as

a whole did not support the inclusion of any work-related mental limitations in the RFC

assessment. Doc. [15] at 8.

Although the ALJ certainly "considered" the opinions of Dr. Gorman and Dr. Williams,

their conclusions tend to support the inclusion rather than exclusion of limitations. Dr. Gorman

opined that Gonzalez suffered from depression and prescribed medication to treat this condition.

Doc. [12] at 267-68, 371-72, 646. Dr. Williams identified depression and social anxiety

disorder as medically determinable impairments and found her to be moderately limited in the

area of social functioning. *Id.* at 293-310.

The undersigned recognizes that a finding of mild and moderate limitations are not

themselves an RFC assessment. *See* Social Security Rule 96-8p; 1996 WL 374184, at *4.

Rather, the findings are used to rate the severity of the mental impairments at Steps 2 and 3 of the

sequential evaluation. *Id.* In this case, the ALJ concluded that although mild and moderate

deficiencies were included in the medical source opinions, Gonzalez's mental impairment

nevertheless was not severe. Even if an impairment is found to be non-severe at step 2, an ALJ

must still consider the limiting effects of all impairments, even those that are not severe, in

determining the claimant's RFC. *Williams v. Astrue*, 2010 WL 517590, at *8 (N.D.Tex. Feb. 11,

2010); SSR 96-8p, 1996 WL374184, at *5. The ALJ recognized this requirement in the written

decision, but the undersigned finds that the ALJ did not adequately account for the omission of

all mental limitations. *See* Doc. [12] at 16.

The ALJ acknowledged the fact that Dr. Williams assessed moderate limitations in

Gonzalez's ability to work in coordination with others, interact appropriately with the general

public, accept supervision, get along with coworkers, and respond appropriately to changes in the work setting.  Doc. [12] at 22; *see Lupold v. Commissioner of Social Security*, No. 2:13-cv-2696, 2014 WL 3809494, at *8 (D. N.J. July 31, 2014)(ALJ erred in determining claimant suffered from moderate limitations in social functioning but failed to include any restrictions to this limitation in RFC); *Decker v. Colvin*, No. 14-428, 2015 WL 106589, at *5-6 (W.D. Pa. Jan. 7, 2015)(ALJ erred in finding moderate limitations in social functioning but failing to include this limitation in vocational expert's hypothetical).  However, the ALJ did not indicate what weight, if any, he attributed to Dr. Williams' conclusions.  He simply recognized Dr. Williams' conclusion of moderate limitations without further explanation.  In addition to being incomplete, the ALJ's findings conflate the severity analysis with the RFC analysis.  The ALJ referenced to the fact that earlier in his opinion he found Gonzalez's mental condition not to be severe.  Even non-severe impairments must be considered as part of the RFC analysis.  *See Williams*, 2010 WL 517590, at *8; SSR 96-8p, 1996 WL374184, at *5. Simply referring to an impairment as "non-severe" does not complete the RFC analysis.

The Commissioner fails to point to any evidence, medical or otherwise, that would constitute substantial evidence supporting the ALJ's omission of all mental limitations from the RFC.  On the other hand, considerable medical evidence points to the opposite conclusion–that Gonzalez's mental condition would be expected to produce at least some limitations.  A treating neurologist, Dr. Gorman, diagnosed severe depression and anxiety disorder.  He also prescribed medication for Gonzalez's depression.  Dr. Gorman did not evaluate what limitations, if any, are attributable to Gonzalez's condition.  However, two agency psychologists (Dr. Matherne and Dr. Williams) concluded that moderate limitations exist in some areas of mental functioning.

Specifically, both Dr. Matherne and Dr. Williams opined that Gonzalez is moderately limited in

social functioning.  Doc. [12] at 290, 303, 308-09.  There does not appear to be any medical

source evidence contradicting these conclusions.  The undersigned finds that substantial evidence

does not support the ALJ's finding of no mental limitations and that the ALJ erred in failing to

incorporate some mental limitations into Gonzalez's RFC.

**Treating Physician**

The undersigned also concludes that the case should be remanded based on the ALJ's

failure to give appropriate weight to Gonzalez's treating physician, Dr. Gorman.  The opinion of

a claimant's treating physician should be accorded great weight in determining disability.

*Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th

Cir. 2005).  The treating physician's opinion on the nature and severity of impairments will be

given controlling weight if it is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with other substantial evidence.  *Id.*  Before

declining to give controlling weigh, and ALJ must consider the factors set forth at 20 C.F.R.

§ 404.1527(d)(2):  (1) the physician's length of treatment of the claimant;  (2) the physician's

frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support

of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the

opinion with the record as a whole; and (6) the specialization of the treating physician.   "Absent

reliable medical evidence from a treating or examining physician controverting the claimant's

treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ

performs a detailed analysis of the treating physician's views under the criteria set forth in 20

C.F.R. § 404.1527(d)."  *Newton*, 209 F.3d at 453 (emphasis in the original).  The ALJ is free to

assign little or no weight to the opinion of any physician for good cause.  *Newton*, 209 F.3d at

455-56.  Good cause may permit an ALJ to discount the weight of a treating physician relative to

other experts where the physician's evidence is conclusory; is unsupported by medically

acceptable clinical, laboratory, or diagnostic techniques; or is otherwise unsupported by the

evidence.  *Id.*  A treating physician's opinion may be rejected when the evidence supports a

contrary conclusion.  *Martinez*, 64 F.3d at 176.

  Dr. Gorman, a neurologist, treated Gonzalez for approximately two years.  He attributed

to Gonzalez exertional limitations far more restrictive than those ultimately assigned by the ALJ.

Doc. [12] at 382-386.  In fact, the vocational expert testified that additional limitations such as

those ascribed by Dr. Gorman would eliminate full-time employment for Gonzalez.  *Id.* at 52.

The ALJ considered Dr. Gorman's opinion but found it should not be given "controlling" weight.

Doc. [12] at 22.  The ALJ did not state precisely how much weight or deference he gave to Dr.

Gorman's opinion, but it was something less than controlling weight and it was less weight than

given to Dr. James Griffin and Dr. Alvin Brent (who were non-treating physicians).  Although

Dr. Gorman diagnosed Gonzalez with "muscle weakness" and "difficulty walking", the ALJ

concluded that these "are symptoms rather than diagnoses."  *Id.*  The ALJ further found that "Dr.

Gorman has never arrived at a substantiated diagnosis as the cause of her alleged weakness."  *Id.*

  At issue is whether the ALJ had good cause for rejecting the opinion of  the treating

physician.  The ALJ provided three reasons for rejecting Dr. Gorman's opinion:  (1) the opinions

of Dr. Griffin and Dr. Brent support the ALJ's RFC assignment; (2) Dr. Gorman has identified

Gonzalez's symptoms but could not definitively diagnose the underlying condition that caused

the symptoms; and (3) neither the CT nor MRI of Gonzalez's brain explain the weakness.

Dr. Griffin and Dr. Brent were non-treating, non examining physicians.[3]  Doc. [12] at 320-27; 360-68.  The ALJ may reject the opinion of the treating physician only if there is reliable medical evidence from a treating or examining physician controverting the claimant's treating physician.  *See Newton*, 209 F.3d at 453.  An ALJ may properly rely on a non-examining physician's assessment when those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician.  *See Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).  A reviewing court accords little weight to the opinion of a reviewing physician if it is contrary to the opinion of the only physician to examine the patient.  *Warncke v. Harris*, 619 F.2d 412, 416 (5th Cir. 1980).  The undersigned finds that the RFC assessments of Dr. Griffin and Dr. Brent cannot by themselves constitute substantial evidence because they are non-examining medical source opinions that contradict the opinion of the treating physician (Dr. Gorman).

The ALJ also relied on the fact that Dr. Gorman had not arrived at a definitive diagnosis of the condition causing Gonzalez's symptoms of weakness.  The undersigned finds that the ALJ's analysis is incomplete.  The limitations attributed to Gonzalez by the treating physician are a function of the symptoms that she exhibits and not merely a function of the diagnosis.  The fact that there is no definitive diagnosis does not mean that the symptoms (or the accompanying limitations) simply cease to exist.  *See Gilliland v. Colvin*, 67 F.Supp.3d 308, 314 (D.D.C. 2014)(ALJ erred in discounting treating physician's opinion based on a lack of definitive diagnosis).

---

[3] The ALJ, the Commissioner, and Gonzalez neglected to indicate whether Dr. Griffin or Dr. Brent would qualify as an examining physician; however, the undersigned did not find any medical records indicating that either physician conduced an examination of Gonazalez.

Although the ALJ noted that CT and brain scans did not explain Gonzalez's weakness, it is undisputed that (according to Dr. Gorman) further tests are needed to arrive at a definitive diagnosis. *Id.* at 40, 649. Dr. Gorman opined that the muscle weakness probably is from a combination of factors and could be linked to fibromyalgia or COPD. *Id.* at 649; *see Rogers v. Commissioner of Social Security*, 486 F.3d 234, 244 (6th Cir. 2007)(explaining that diagnosis of fibromyalgia involves systematic elimination of other diagnoses). The record further reflects that Gonzalez lacked the financial means to obtain testing that might permit Dr. Gorman to arrive at a more specific diagnosis. *Id.* at 40, 649. The Social Security regulations and the Fifth Circuit caution that where doubts are raised about a treating physician's diagnosis and/or opinions and additional information could remove those doubts, a remand is appropriate where there is prejudice to the claimant. 20 C.F.R. § 404.1512(e); *Newton*, 209 F.3d at 457-58. The undersigned finds that the ALJ failed to demonstrate good cause for rejecting the opinion of the treating physician as to Gonzalez's RFC. The Commissioner offers alternative arguments for rejecting Dr. Gorman's opinion based on evidence in the record, but these are *post hoc* rationalizations and not the findings of the ALJ. *See* Doc. [15] at 16; *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *Allen v. Burnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council. *Newton*, 209 F.3d at 455. The undersigned finds that the case should be remanded for further consideration of Dr. Gorman's opinion.

In light of the recommendation to remand, the undersigned will forgo discussion of the remaining issues raised in Gonzalez's motion for summary judgment, i.e. whether Gonzalez is capable of performing past relevant work and whether other severe impairments exist

15

(neuropathy, incontinence and headaches).

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that Gonzalez's [13] Motion for Summary Judgment be GRANTED and that the case be remanded for further proceedings.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed **factual findings and legal conclusions** that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 17th day of February, 2016.

/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE